**PLAZA MARINE, INC. and Plaza Petroleum, Inc., Plaintiffs,**

**v.**

**EXXON CORPORATION, Defendant.**

**No. 92 Civ. 1189 (JFK).**

United States District Court, S.D. New York.

Jan. 6, 1993.

Robert Castellano, New York City, for plaintiffs.

Exxon Law Department Linden, NJ (Patrick J. Conlon, of counsel), for defendant.

## OPINION AND ORDER

KEENAN, District Judge:

## INTRODUCTION

Before the Court is the motion of defendant Exxon Corporation, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), for an order dismissing the plaintiffs' amended complaint for failure to state a legally cognizable claim. This is the second pre-answer motion that defendant has filed with this Court. In August of 1992, the Court granted defendant's first motion, dismissing plaintiffs' first complaint, but granting them leave to replead. *See Plaza Marine, Inc., et al. v. Exxon Corp.*, Op. and Order, August 5, 1992, at 5, 1992 WL 197398 [*"Plaza I "*]. This is an admiralty action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and consequently the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. For the reasons set forth below, defendant's motion is granted.

## FACTS

Plaintiffs are in the business of selling diesel fuel to boats from a facility on Staten Island, New York. Plaintiffs allege that on December 19, 1989, the defendant negligently discharged oil into the Arthur Kill waterway. As a result of the spill, the United States Coast Guard temporarily suspended navigation on the Arthur Kill. In their first complaint, plaintiffs alleged that they suffered economic loss because

> [a]s a result of the negligent discharge by [defendant] and the subsequent suspension of marine activity by the Coast Guard, Plaintiffs were wholly unable to conduct business and to sell marine diesel fuel to their customers during the period of December 31, 1989 until January 11, 1990 in that said customers could not navigate the waterway serving Plaintiffs' terminal in Staten Island.

Complaint ¶ 11.

Plaintiffs now allege in their amended complaint that, in addition to their pure economic loss, they suffered injury to their proprietary interest in the terminal facility on Staten Island, New York, that it had leased from Petroport Terminal Corporation ("Petroport"). *See* Amended Complaint ¶ 10. In particular, the plaintiffs allege that the oil from the spill "coated the terminal's loading and unloading facility thereby rendering the terminal unusable for its intended purpose until the facilities were cleaned." *Id.* Plaintiffs attach their terminal service agreements with Petroport as exhibits to the amended complaint. *See id.* ¶ 8 & exhibits A–B. Finally, as they did in their first complaint, plaintiffs allege that Exxon breached its duty to prevent oil spills in waterways and, subsequently, plaintiffs sustained damages in the amount of $220,000 as a result of the lost business during the period that the waterway was closed. *See id.* ¶¶ 14–15.

## DISCUSSION

### A. *Applicable Standard*

■ In resolving a motion to dismiss pursuant FRCP 12(b)(6), the Court must accept as true all of the well-pleaded facts in the amended complaint. *See Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964). The Court should not dismiss the amended complaint unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Analysis*

■ The only issue before the Court is whether plaintiffs' amended complaint satisfies the maritime tort requirement of physical injury to plaintiffs' person or proprietary interests, as set forth in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308–09, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927). In *Robins*, the Supreme Court held that, absent a showing of injury to person or property, pure economic loss arising from a maritime tort is not recoverable, even if such losses were a foreseeable consequence of the defendant's conduct. 275 U.S. at 308–09, 48 S.Ct. at 135; *see Federal Commerce & Navigation Co. Ltd. v. M/V Marathonian*, 528 F.2d 907, 908 (2d Cir.1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976).

Because the oil spill only damaged the docks at the terminal facility, the plaintiffs must show a proprietary interest in these docks. As a threshold issue, plaintiffs contend that "the legal characterization of [their] interest in the terminal is not a proper determination on a Motion made pursuant to [FRCP] 12(b)(6)." As mentioned above, the Court is aware that it must accept as true all of the well-pleaded facts in the amended complaint. *See Cooper*, 378 U.S. at 546, 84 S.Ct. at 1734. The Court is also aware that throughout the amended complaint the plaintiffs refer to the facility as "its [sic] terminal facility" or as the "Plaintiff's [sic] terminal facility." *See* Amended Complaint ¶¶ 8, 13, 15. Nevertheless, because the terminal service agreements are attached to the amended complaint, *see id.* ¶ 8 & exhibits A–B, the Court may also review them to determine plaintiffs' contractual rights to the damaged property.

The plaintiffs then argue that they have set a "definitional test" of having proprietary rights in the terminal facility. They quote

the following definitions of "proprietary" from Black's Law Dictionary: (1) "belonging or pertaining to a proprietor"; and (2) "made and marketed by a person or persons having the exclusive right to manufacture or sell such." *See* Plaza Marine Brief at 7. The terminal service agreements, however, reveal that Petroport owned the docks at the facility. *See* Amended Complaint, App. A ¶¶ G, 2, at 2–3. Not only did the plaintiffs lack the "exclusive right to manufacture and sell" the damaged property, but they also lacked the right of ownership in any "fixtures, equipment, or appurtenances" that they bought and placed in the terminal area. *See id.* App. A, ¶ 7. Indeed, plaintiffs were short-term, non-exclusive lessees of a single Petroport on-shore oil storage tank, which the spill apparently never damaged.[1]

Despite the lack of ownership rights, plaintiffs claim that the dock damage satisfies the physical injury requirement because they had "exclusive bunkering rights" at the Petroport terminal under the contract. *See id.* App. A, ¶ H. Bunkering, as defined in the New Lexicon Webster's Dictionary of the English Language, 1988 ed., is the "fueling of ships or vehicles." *See id.* at 129. Under these agreements, only plaintiffs could sell marine diesel fuel to tugs at the Petroport docks. Plaintiffs assert that these rights satisfy the "character of the interest harmed" test, as set forth in *Vicksburg Towing v. Mississippi Marine Transport,* 609 F.2d 176, 177 (5th Cir.1980). Nevertheless, the Court finds the present case distinguishable from *Vicksburg.* In *Vicksburg,* the plaintiffs were the owners of the damaged property. *See id.* at 177. In this case, however, "exclusive bunkering rights" granted plaintiffs neither a property interest in the docks nor the exclusive right to use the docks. Instead, this provision represented Petroport's agreement not to sell marine diesel fuel to tugs at the facility. As such, it was merely a non-competition clause. Paragraph F of the agreement reveals that barges and vessels loading or discharging at the docks had priority over plaintiffs' bunkering of tugs. *See* Amended Complaint, App. A., ¶ F. Thus, not only

were plaintiffs' dock privileges non-exclusive, but they were also subordinate.

In addition, there is no question that Petroport, not plaintiffs, ultimately controlled, and bore the ultimate risk of loss for, the docks. Defendants controlled all aspects of the facility's operation, including the "right to reject any marine tanker or barge, tank truck or any Product contained therein ... without liability whatever on the part of Petroport to [plaintiffs]." *See id.,* App. A ¶¶ G, 2, at 2–3. Furthermore, the plaintiffs were liable only for damage resulting from their negligence. *See id.,* App. A, ¶ 16, at 7. The agreements did require plaintiffs to cooperate with Petroport to obtain "reimbursement for the costs of containment and clean-up" borne by either party as a result of a third-party spill, but the ultimate burden of those costs was not theirs. *See id.*

Under these circumstances, plaintiffs had no greater proprietary rights than did the vessel-time charterers in *Robins,* 275 U.S. at 308–09, 48 S.Ct. at 135, and *M/V Marathonian,* 528 F.2d at 908, or the railroads in *Louisville and N.R. Co. v. M/V Bayou Lacombe,* 597 F.2d 469, 472 (5th Cir.1979), all of whom were denied recovery, despite their foreseeable losses.

The Court has reviewed plaintiffs' remaining arguments and finds them to be without merit.

## CONCLUSION

For the reasons set forth above, defendant's motion pursuant to FRCP 12(b)(6) is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant. Having already granted the plaintiffs "two bites of the apple," leave to replead is denied. The Court, however, denies defendant's application for sanctions. This action is ordered removed from the active docket of this Court.

SO ORDERED.

---

1. Plaintiffs do not allege any damage to the storage tank.